UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CARLTON F. BENNETT, and
BENNETT AND SHARP, PLLC,

                Plaintiffs,

v.                                                    Action No. 2:17cv92

JOHN E. ZYDRON, and
ZYDRON LAW FIRM, PLLC,

                Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on the motions to dismiss of defendant John E. Zydron and defendant Zydron Law Firm, PLLC. ECF Nos. 6, 15. By order of reference dated April 11, 2017, ECF No. 18, this case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, the Court RECOMMENDS that John E. Zydron's motion to dismiss, ECF No. 6, be DENIED, and the Zydron Law Firm's motion to dismiss, ECF No. 15, be DENIED.

### I.    PROCEDURAL HISTORY

On February 14, 2017, plaintiffs Carlton F. Bennett ("Mr. Bennett") and Bennett and Sharp, PLLC ("Bennett and Sharp"), filed a complaint against defendants John E. Zydron ("Mr.

Zydron") and Zydron Law Firm, PLLC ("the Zydron Law Firm"), seeking relief for violations of the Lanham Act, as codified at 15 U.S.C. § 1125(a)(1). Compl., ECF No. 1. The complaint alleges that, "by utilizing a website that contained false and misleading information," the defendants "engaged in a series of false and misleading descriptions, facts and false designations of origin and false or misleading representations of fact." Compl. ¶ 6.

On March 21, 2017, Mr. Zydron, through counsel, filed a motion to dismiss the complaint, and a supporting memorandum, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 6, 7. In the memorandum, Mr. Zydron also argues that Mr. Bennett, individually, lacks standing to bring the complaint. ECF No. 7 at 3–4. Plaintiffs filed a memorandum in opposition, ECF No. 13, and Mr. Zydron replied thereto, ECF No. 17.

On April 6, 2017, the Zydron Law Firm filed a motion to dismiss the complaint, with a memorandum in support, pursuant to Rule 12(b)(6). ECF Nos. 15, 16. In the memorandum, the Zydron Law Firm also argues that Mr. Bennett, individually, lacks standing. ECF No. 16 at 3–5. Plaintiffs filed a memorandum in opposition, ECF No. 20, and the Zydron Law Firm replied thereto, ECF No. 21.

Both motions to dismiss are ripe for consideration. Mr. Zydron and the Zydron Law Firm requested a hearing on the motions. ECF Nos. 19, 22. The Court finds that a hearing is not necessary, and the requests are DENIED.

## II. FACTUAL BACKGROUND

According to the complaint,[1] Mr. Bennett and Mr. Zydron previously practiced law together as principals at the firm Bennett and Zydron, PLLC. Compl. ¶¶ 1–2. Mr. Bennett and

---

[1] For purposes of the pending motions, the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

Mr. Zydron stopped doing business together on January 1, 2016. Compl. ¶ 3. Now, Mr. Bennett is a principal at Bennett and Sharp. Compl. ¶ 1. Mr. Zydron is the principal at the Zydron Law Firm in the city of Virginia Beach. Compl. ¶ 2.

On dates not specified in the complaint, but presumably after Mr. Bennett and Mr. Zydron stopped doing business together, the website for the Zydron Law Firm displayed information about verdicts won or settlements reached by the Zydron Law Firm on behalf of plaintiffs in Virginia. Compl. ¶¶ 6–7. The website represented that Mr. Zydron was involved as an attorney in at least 40 such cases, dating from 2000 to 2015. Compl. ¶ 7(a)–(nn). Mr. Zydron, however, was not actually involved in any of these cases. Compl. ¶¶ 6–7. Instead, Mr. Bennett and/or co-counsel originated and handled the cases. Compl. ¶ 7(a)–(nn).

The complaint identifies seven particular instances where the case descriptions on the Zydron Law Firm website included altered versions of *Virginia Lawyer's Weekly* articles. Compl. ¶ 7(a), (b), (h), (q), (ll), (mm), (nn). In each of these instances, an original *Virginia Lawyer's Weekly* article, about a successful plaintiff's outcome, referenced Mr. Bennett as one of plaintiff's attorneys in the case and included a photograph of him.[2] *Id.*; Compl. Ex. A–H. At least two of the seven original articles included Mr. Zydron's name and photograph. Compl. ¶ 7(q), (ll); Compl. Ex. E–H. The *altered* articles, as displayed on the Zydron Law Firm website, either deleted Mr. Bennett's name and photograph (while leaving Mr. Zydron's name and photograph in place), or substituted Mr. Zydron's name and photograph for the name and photograph of Mr. Bennett.[3] Compl. ¶ 7(a), (b), (h), (q), (ll), (mm), (nn); Compl. Ex. A–H.

---

[2] Three of the original articles also referenced Kevin Sharp ("Mr. Sharp") as one of plaintiff's attorneys and included a photograph of him. Compl. ¶ 7(h), (q), (ll); Compl. Ex. E–H.

[3] In certain instances, the altered articles also removed the names and photographs of Mr. Bennett's co-counsel, including Mr. Sharp. Compl. ¶ 7(h), (q), (ll), (mm); Compl. Ex. E–H.

Plaintiffs allege that the "misrepresentations" on the Zydron Law Firm website, as well as the "photoshops and deletions of Mr. Bennett's name," were made "willfully and maliciously and were a false designation of origin, false and misleading description of fact, and false and misleading misrepresentation of fact," in violation of 15 U.S.C. § 1125(a)(1)(A), (B). Compl. ¶ 8. *See also* Compl. ¶¶ 5, 6 ("Mr. Zydron and his firm engaged in a series of false and misleading descriptions, facts and false designations of origin and false or misleading representations of fact in violation of 15 U.S. Code § 1125.").

Section 1125(a) of Title 15, United States Code, provides:

(1) Any person who, on or in connection with any . . . services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her . . . services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's . . . services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

"Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss complaints, or claims within complaints, upon which no relief can be granted. Fed. R. Civ. P. 12(b)(6); *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 354 (E.D. Va. 2015). In order to survive a

motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard requires that the complaint state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In essence, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ascertaining whether a complaint states a plausible claim for relief is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss pursuant to Rule 12(b)(6) challenges "the sufficiency of a complaint; it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense." *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d 733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Therefore, "[i]n ruling on a 12(b)(6) motion, a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The factual allegations, however, "cannot be mere speculation, and must amount to more than 'a sheer possibility that a defendant has acted unlawfully.'" *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 747 (E.D. Va. 2016) (quoting *Iqbal*, 556 U.S. at 678). In addition, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

## IV. ANALYSIS

The Court finds: (A) Mr. Bennett has standing to bring Lanham Act claims against the defendants; (B) the claims against Mr. Zydron, individually, do not fail as a matter of law; and (C) the complaint sufficiently states a claim for false association under section 1125(a)(1)(A), and for false advertising under section 1125(a)(1)(B). In reaching these conclusions, the Court is mindful that, to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court has reviewed the detailed factual content contained in the complaint, which describes numerous instances where defendants allegedly published apparent falsehoods concerning legal services rendered, taking credit for the work of Mr. Bennett and others. In light of these allegations, and as explained below, the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

### A. Mr. Bennett has standing to bring Lanham Act claims against the defendants.

Before addressing whether plaintiffs' claims against defendants fail as a matter of law, the Court addresses whether Mr. Bennett, individually, has standing to bring the claims.

#### 1. Article III standing

As provided by Article III of the Constitution, federal courts have subject-matter jurisdiction over justiciable cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). The doctrine of standing is one component of justiciability, "serv[ing] to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The standing issue, that is, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant

his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)), presents "a threshold question in every federal case." *Id.* at 498. In order to satisfy the Article III standing requirements, a plaintiff must demonstrate that:

> (1) [he] has suffered an injury in fact; (2) the asserted injury in fact is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely rather than just conjectural that the asserted injury in fact will be redressed by a decision in the plaintiff's favor.

*Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). The Supreme Court has defined the first element of standing—an "injury in fact"—as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

Defendants do not deny that plaintiffs' allegations give Mr. Bennett standing under Article III to bring his Lanham Act claims, and the Court is satisfied Mr. Bennett has such standing. The complaint sufficiently alleges that Mr. Bennett suffered an injury-in-fact, concrete and particularized, traceable to and caused by defendants' actions, which will likely be redressed by success on the claims in the complaint. *See* Compl. ¶¶ 6–8, ad damnum clause.

### 2. Statutory standing

Although the complaint presents a case or controversy within the Court's Article III jurisdiction, defendants argue that, in accordance with the Supreme Court decision *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), Mr. Bennett lacks statutory standing to assert a Lanham Act claim. ECF No. 7 at 3–4; ECF No. 16 at 3–5; ECF No. 21 at 2–3.

A statutory cause of action extends only to those plaintiffs: (1) "whose interests 'fall within the zone of interests protected by the [statute] invoked,'" and (2) "whose injuries are proximately caused by violations of the statute." *Lexmark*, 134 S. Ct. at 1388, 1390 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). To satisfy the first requirement of statutory standing, the "zone-of-interests test," a plaintiff in a Lanham Act case "must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 134 S. Ct. at 1390. A Lanham Act plaintiff ordinarily satisfies the second, proximate-cause requirement when he or she "show[s] economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

Defendants contend that any injuries resulting from defendants' actions would accrue to the plaintiff professional limited liability company ("PLLC"), Bennett and Sharp, and its ability to attract clients. ECF No. 7 at 4; ECF No. 16 at 5. Defendants assume plaintiffs are alleging "that potential clients are misled by the information, thus drawing legal business away from the plaintiff [PLLC]." ECF No. 7 at 3; ECF No. 16 at 3. Defendants argue that because the plaintiff PLLC is a legal entity separate from its members and agents, Mr. Bennett has no right to sue individually on an injury to that entity, and any losses to Mr. Bennett, individually, as a result of defendants' conduct would only be derivative of his ownership interest in the PLLC. ECF No. 7 at 3; ECF No. 16 at 4 ("Bennett's status as a 'member' of the PLLC is no different than a shareholder or officer of a corporation . . . . [and] a stockholder has no right to sue individually on an injury to the corporation.").

Defendants are correct that Mr. Bennett cannot recover for injuries related to lost sales or lost clients incurred by the plaintiff PLLC. *See, e.g.*, *Painter's Mill Grille, LLC v. Brown*, 716

8

F.3d 342, 347–48 (4th Cir. 2013) (finding that, by operating as a limited liability company, agents of that company "gave up standing to claim damages to the LLC"). This does not end the standing inquiry, however, because the complaint also addresses injury to Mr. Bennett, independent of the PLLC. In accordance with *Lexmark*, a plaintiff may satisfy the zone-of-interests test by demonstrating "an injury to a commercial interest in reputation *or* sales." 134 S. Ct. at 1390 (emphasis added). The factual allegations in the complaint, and the reasonable inferences drawn therefrom, demonstrate that Mr. Bennett has pled an injury to a commercial interest in his reputation. The complaint describes, in detail, how defendants falsely traded on Mr. Bennett's work and claimed it as their own. Compl. ¶¶ 6, 7(a)–(nn), 8. Based on these specific allegations, the Court can reasonably infer resulting injury to Mr. Bennett's professional reputation. After all, a lawyer's stock-in-trade *is* his or her reputation, and the deceptive or false attribution of credit to another could compromise the reputation of the lawyer who actually provided the services in question. As a result, the Court finds that Mr. Bennett, individually, has satisfied the first requirement for statutory standing, notwithstanding his inability to recover damages incurred by the PLLC.[4]

The Court also finds that Mr. Bennett has satisfied the second requirement of statutory standing, in that he has pled individual injury proximately caused by defendants' alleged Lanham Act violations. *See Lexmark*, 134 S. Ct. at 1390. Mr. Bennett claims to have suffered individual injury as a result of defendants' actions, Compl., ad damnum clause; and, as noted above, the Court infers that such injury relates to his professional reputation. The harm of reputational injury is closely connected to conduct prohibited by the Lanham Act, a statute designed, in part,

---

[4] In addition, pursuant to 15 U.S.C. § 1117(a), a plaintiff in a Lanham Act case may be entitled to disgorge the defendants' profits, and plaintiffs seek such disgorgement here. *See* Compl., ad damnum clause. These profits may be independent of the plaintiff PLLC's lost sales and may be payable to Mr. Bennett.

9

"to protect persons engaged in [commerce within the control of Congress] against unfair competition." 15 U.S.C. § 1127. The complaint describes 40 case descriptions on the Zydron Law Firm's website that reportedly misrepresent Mr. Zydron's involvement in cases actually handled by Mr. Bennett or co-counsel. Compl. ¶ 7(a)–(nn). Based on these facts, the Court "can comfortably infer that the alleged [descriptions] contributed to" the injury pled. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 713 (4th Cir. 2016).

Mr. Bennett has standing to bring his complaint. The Court now evaluates defendants' motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

**B. The claims against Mr. Zydron, individually, do not fail as a matter of law.**

Defendant Mr. Zydron argues that the claims against him, individually, fail as a matter of law because, as a principal of the defendant PLLC, he is not personally liable for claims relating to the content of the website belonging to the PLLC. ECF No. 7 at 2; ECF No. 17 at 4–5. In support, Mr. Zydron notes two Virginia Code sections, 13.1-1109 and 13.1-1019. ECF No. 7 at 2. Section 13.1-1109 provides that a member of a PLLC "shall not, *by reason of being any member*, manager, agent or employee of a professional limited liability company, be personally liable for any debts or claims against, or the acts or omissions of the professional limited liability company . . . ." Va. Code Ann. § 13.1-1109 (emphasis added). Section 13.1-1019 provides that no member of a limited liability company "shall have any personal obligation for any liabilities of a limited liability company, whether such liabilities arise in contract, tort or otherwise, *solely by reason of being a member*, manager, organizer or agent of a limited liability company . . . ." Va. Code Ann. § 13.1-1019 (emphasis added).

In this case, however, the plaintiffs do not seek to impose liability on Mr. Zydron simply by reason of his being a member or manager of the defendant PLLC. Instead, the complaint

10

alleges that Mr. Zydron personally engaged in the reported misconduct. *See, e.g.*, Compl. ¶ 6 ("*Mr. Zydron* and his firm engaged in a series of false and misleading descriptions"); ¶ 7(a) ("the *Defendants* substituted Mr. Zydron's picture); ¶ 7(b) ("*Mr. Zydron* photoshopped Mr. Bennett out . . . and substituted his picture and name"); ¶ 7(d) ("*Mr. Zydron* misrepresented that he had something to do with the case"); ¶ 7(h) ("*Mr. Zydron* removed Bennett's and Sharp's names and photoshopped Mr. Bennett and Mr. Sharp out"); ¶ 7(q) ("*Mr. Zydron* photoshopped Bennett and Sharp out . . . and deleted their names"); ¶ 7(ll) ("*Mr. Zydron* photoshopped them out on his website and deleted their names"); ¶ 7(mm) ("*Mr. Zydron* photoshopped Bennett and Mr. Buzzard out . . . and substituted his picture"); ¶ 7(nn) ("*Mr. Zydron* photoshopped his picture and in place of Mr. Bennett substituted his name as attorney") (emphases added).

The pertinent provision of the Lanham Act provides that liability attaches to "[a]ny person" who engages in false association or false advertising. 15 U.S.C. § 1125(a)(1). Mr. Zydron's status with respect to the PLLC does not shield him from suit when plaintiffs allege facts regarding his own personal and allegedly unlawful conduct. *See McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 737–40 (E.D. Va. 2007) (dismissing as parties individual defendants where plaintiff failed to "plead facts demonstrating a particular member's culpability in the LLC's tortious conduct that extends beyond that person's mere status as a member of the company," but maintaining action against individual defendant where plaintiff pled that defendant personally participated in the misconduct).

C. **The complaint sufficiently states a claim for false association under section 1125(a)(1)(A), and for false advertising under section 1125(a)(1)(B).**

Plaintiffs have sufficiently alleged claims under subsection A and subsection B of 15 U.S.C. § 1125(a)(1).

1. **The complaint sufficiently states a "reverse-passing-off" claim under section 1125(a)(1)(A).**

Subsection A of 15 U.S.C. § 1125(a)(1) "describes the cause of action known as 'false association.'" *Belmora*, 819 F.3d at 706. The subsection "prohibits a 'false designation of origin' that is 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . or as to the origin' of 'goods, services, or commercial activities.' 15 U.S.C. § 1125(a)(1)(A)." *Universal Furniture Int'l, Inc., v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010). The type of false association claim at issue in this case is "a 'reverse passing off,' which occurs when 'a producer misrepresents someone else's goods or services as his own.'" *Id.* (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)).

> A reverse-passing-off plaintiff must prove four elements: "(1) that the work at issue originated with the plaintiff; (2) that the origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by defendant's false designation of origin."

*Belmora*, 819 F.3d at 710 (quoting *Universal Furniture*, 618 F.3d at 438). Defendants argue that plaintiffs' complaint does not sufficiently allege the third element (consumer confusion), or the fourth element (harm resulting from the false designation). ECF No. 7 at 5–6; ECF No. 16 at 6–7; ECF No. 17 at 8; ECF No. 21 at 3–4.

The complaint alleges that the work at issue originated with the plaintiffs, and that defendants falsely designated the origin of the work. Compl. ¶¶ 6–8. With respect to the third element, whether "the false designation of origin was likely to cause consumer confusion," *Universal Furniture*, 618 F.3d at 438, defendants argue that the complaint "contains absolutely no allegation that the purported conduct of the Defendant caused any 'consumer confusion.'" ECF No. 21 at 4. *See also* ECF No. 7 at 5; ECF No. 16 at 6; ECF No. 17 at 8. Plaintiffs, on the

other hand, contend that, where "[d]efendants have taken Bennett's work and brazenly represented it to be their own," it is "'difficult to imagine how a designation of origin . . . could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the [services].'" ECF No. 13 at 5 (quoting *Universal Furniture*, 618 F.3d at 438–39).

The Court agrees with plaintiffs. Although the complaint does not include the phrase "consumer confusion," the complaint is properly understood as contending that defendants' conduct caused confusion and misunderstanding among website visitors, potential clients, and the public about who was responsible for the work advertised. The complaint reports 40 misrepresentations, published on the Zydron Law Firm website, where defendants took credit for the work of Mr. Bennett or other attorneys. The complaint further alleges that plaintiffs were damaged as a result. Considering such allegations, and drawing all reasonable inferences in favor of plaintiffs, the Court concludes that the complaint sufficiently sets forth the third element of a reverse-passing-off claim.

The Court also finds that the complaint sufficiently alleges the fourth element, that plaintiffs were harmed by defendants' false designation of origin. One type of harm in a reverse-passing-off case is that "the 'originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product.'" *Universal Furniture*, 618 F.3d at 439 (quoting *Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981)). Here, the complaint states that plaintiffs were damaged as a result of Mr. Zydron's actions. Compl., ad damnum clause. The numerous misrepresentations made on the Zydron Law Firm's website allegedly deprived plaintiffs, by way of example, of the advertising value of their names and of "the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory [legal

services.]" *Universal Furniture*, 618 F.3d at 439. Accordingly, the complaint states a claim under section 1125(a)(1)(A).

### 2. The complaint sufficiently states a false advertising claim under section 1125(a)(1)(B).

Subsection B of 15 U.S.C. § 1125(a)(1) "defines the cause of action for 'false advertising.'" *Belmora*, 819 F.3d at 706. The subsection creates liability for "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

> [A] plaintiff asserting a false advertising claim under the Lanham Act must establish that: "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products."

*PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (quoting *Scotts Co. v. United Industries*, 315 F.3d 264, 272 (4th Cir. 2002)). Defendants argue that the complaint fails to sufficiently allege elements two, three, or five of a false advertising claim. ECF No. 7 at 6; ECF No. 16 at 7; ECF No. 17 at 8; ECF No. 21 at 5–7. The Court disagrees.

The complaint sufficiently alleges the third element, that the reported misrepresentations "actually deceive[] or ha[ve] the tendency to deceive a substantial segment of [the] audience." *PBM Prod.*, 639 F.3d at 120. The complaint alleges 40 instances in which credit for legal services was assigned to Mr. Zydron when he was not actually responsible for the results achieved. Compl. ¶ 7(a)–(nn). For example, the complaint notes a *Virginia Lawyer's Weekly* article describing a $3.7 million dollar settlement reached on behalf of a trucking-accident

victim. Compl. ¶ 7(b). The case "was originated by Mr. Bennett," and "Mr. Zydron had absolutely nothing to do with the case." Compl. ¶ 7(b). The original article contains the name and photograph of Mr. Bennett and another attorney, Stewart Gill. Compl. Ex. C. The altered article, as displayed on the Zydron Law Firm website, substitutes Mr. Zydron's name and photograph in place of Mr. Bennett's name and photograph. Compl. ¶ 7(b); Compl. Ex. D. The complaint states that, through such representation, "Mr. Zydron portrayed himself and Stewart Gill as completely handling this case for the plaintiff, which is false and grossly misleading." Compl. ¶ 7(b). In another instance, the Zydron Law Firm website displayed a $105,450.00 jury verdict reached in an auto collision case in Chesapeake Circuit Court in 2012. Compl. ¶ 7(aa). The complaint states that "Mr. Bennett originated this case and did all of the work and tried it successfully to a jury verdict. Mr. Zydron did nothing." Compl. ¶ 7(aa).

In cases where an advertisement is literally false, as alleged here, "'a violation may be established without evidence of consumer deception.'" *PBM Prod.*, 639 F.3d at 120 (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)). Moreover, even if a showing of consumer deception was required in this instance, it is reasonable to infer that defendants' misrepresentations deceived or tended to deceive website visitors. The complaint also sufficiently alleges that the misrepresentations are "material, in that [they are] likely to influence the purchasing decision." *PBM Prod.*, 639 F.3d at 120. The Court agrees with plaintiffs' argument that "the entire reason a lawyer would advertise positive case outcomes is to influence the purchasing decision—to convince prospective clients that the lawyer is competent, that he can get good results, and that he has expertise in cases similar to the prospective client's." ECF No. 13 at 7. Thus, in light of the factual allegations concerning the many positive case outcomes that defendants advertised as attributable to Mr. Zydron, and

considering the reasonable inferences drawn therefrom, the complaint properly asserts the second element of a false advertising claim. With respect to the fifth element, the complaint asserts that plaintiffs have been injured as a result of defendants' misrepresentations, Compl., ad damnum clause, and the Court can reasonably infer that lost sales and/or reputational injury may ensue from the activities alleged.

Importantly, "[a]lthough [the Court] conclude[s] that [plaintiffs] ha[ve] *alleged* an adequate basis to proceed under § 1125(a), [they] cannot obtain relief without *evidence* of injury proximately caused by [defendants'] alleged misrepresentations." *Lexmark*, 134 S. Ct. at 1395. At this juncture, the Court finds "only that [plaintiffs are] entitled to a chance to prove [their] case." *Id.*

## V. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS Mr. Zydron's motion to dismiss, ECF No. 6, be DENIED, and the Zydron Law Firm's motion to dismiss, ECF No. 15, be DENIED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2)

(also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
August 17, 2017