**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**CARLTON F. BENNETT, et al.**

      **Plaintiffs**

**v.**                                                                                     **CASE NO. 2:17-cv-00092**

**JOHN E. ZYDRON, et al.**

      **Defendants**

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendants, John E. Zydron ("Mr. Zydron") and Zydron Law Firm, PLLC ("Zydron Law Firm") (collectively "Defendants"), by counsel, offer this Memorandum in Support of their Motion for Summary Judgment to the Complaint filed by plaintiff, Carlton F. Bennett ("Mr. Bennett") and Bennett and Sharp, PLLC ("BSFirm") (collectively "Plaintiffs"), and state as follows:

## I.      Introduction

Plaintiffs Mr. Bennett and BSFirm have filed Lanham Act claims of False Designation of Origin (Reverse Passing Off) under 15 U.S.C. § 1125(a)(1)(A) and False Advertising under 15 U.S.C. § 1125(a)(1)(B) against Defendants Zydron Law Firm and Mr. Zydron.

Mr. Bennett and Mr. Zydron practiced law together at the law firm of Bennett and Zydron, P.C. for over 25 years.   In January of 2016, Mr. Bennett and Mr. Zydron went their separate ways and opened their own law practices.   Plaintiffs, through the filing of this Complaint, allege that Defendants, Mr. Zydron and his new law firm, Zydron Law Firm, "engaged in a series of false and misleading descriptions, facts and false designations of origin

and false or misleading representations of fact" on Zydron Law Firm's website when describing past case results obtained at Bennett and Zydron, P.C.   (Compl. ¶ 6.)   Specifically, the statements on Zydron Law Firm's website fall into two categories – statements on the website's "Case Results" page and statements made on the website's "Press & News" page.   Each of those pages on the website contains a disclaimer that the cases discussed are those of Bennett and Zydron, P.C. and not of Zydron Law Firm.

Defendants now move for summary judgment and asks that Plaintiffs' False Designation of Origin / Reverse Passing Off claim be dismissed because Plaintiffs have failed to offer any evidence on two essential elements of this Section 1125(a)(1)(A) claim:  (1) that the "works" or case results at issue "originated" with the Plaintiffs and (2) that there is a likelihood of confusion, i.e, that a "substantial number of customers . . . are likely to be misled" by the false designation of origin.   As discussed below, Plaintiffs' failure to offer any evidence to support these two essential elements mandates that the Court dismiss Plaintiffs' Section 1125(a)(1)(A) claim and grant Defendants' motion for summary judgment.

Defendants also move for summary judgment as to Plaintiffs' False Advertising claim brought pursuant to Section 1125(a)(1)(B).   First, Plaintiffs have failed to offer any evidence that the statements at issue are "literally false" as alleged.   The statements are accompanied by clear disclaimers which create an ambiguity that prevents a finding of "literal falsity."   Second, Plaintiffs have offered no evidence of consumer deception.   Plaintiffs have taken the position thus far that they do not need to offer any evidence of consumer deception since consumer confusion is presumed for statements which are "literally false."   However, since "literal falsity" cannot apply here for the reasons herein, and Plaintiffs have offered no consumer surveys or expert testimony regarding consumer deception, Plaintiffs' false advertising claim cannot

survive.   Last, Plaintiffs have failed to offer any evidence to satisfy the final element of a false advertising claim – harm.   Plaintiffs bear the burden to establish a "causal link" between the Defendants' "actions and any alleged harm to [plaintiff] or benefit to [defendant]."   <u>Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.</u>, 330 F. Supp. 2d 668, 676 (E.D. Va. 2004), <u>aff'd</u> 141 F. App'x 129 (4th Cir. 2005).   The record is simply devoid of any evidence of a clear harm caused by the Defendants' actions.   Summary judgment must be granted when a plaintiff fails to prove any one of these essential elements of a false advertising claim.

For all of the reasons discussed herein, Defendants respectfully request that this Court grant their motion for summary judgment and enter judgment in favor of Defendants.

## II.   <u>Local Rule 56(B) Undisputed Facts</u>

Pursuant to Local Rule 56(B), Defendants set forth the following list of material facts not subject to dispute:

1.    Mr. Bennett and Mr. Zydron practiced law together as officers and shareholders at the firm Bennett and Zydron, P.C.  (Compl. ¶¶ 1-2, ECF No. 1; Def.'s Answer ¶¶ 1-2, ECF No. 29.)

2.    Effective January 2016, Mr. Bennett and Mr. Zydron decided to no longer take additional cases at Bennett and Zydron, P.C., and each formed a new firm to handle new cases starting in January 2016.  (Tr. of J. Zydron at 21-22, attached as <u>Exhibit A</u> to Dec. of Kristan B. Burch (the "Burch Declaration").)

3.    Mr. Bennett is now a member at BSFirm.  (Compl. ¶ 1; Def.'s Answer ¶ 1.)

4.    Mr. Zydron is now an officer and shareholder at the Zydron Law Firm in Virginia Beach.  (Compl. ¶ 2; Answer ¶ 2.)

<u>"Case Results" Page</u>

5.      At the time that the Complaint was filed, the website for Zydron Law Firm

contained a page entitled "Case Results" which listed actual Bennett and Zydron, P.C. cases

which were tried or settled.  A true and accurate copy of the relevant web pages (as annotated) is

attached as <u>Exhibit B</u> to the Burch Declaration.  (ZLF 128-139, 147-49, <u>Exhibit B</u> to Burch

Dec.).

6.      At the time when the Complaint was filed, the following disclaimer appeared on

the Zydron Law Firm website on the "Case Results" page above the actual cases listed:

> Here at The Zydron Law Firm, P.L.L.C., we are proud of the work we do
> for our clients in Hampton Roads, Virginia, and North Carolina. Now, you can
> read about some of the verdicts and settlements obtained in cases at Bennett and
> Zydron, P.C. that involve personal injury, traumatic brain injury, trucking
> accidents, wrongful death, medical malpractice, and nursing home malpractice.
> Please take a few minutes and familiarize yourself with some of our cases under
> Bennett and Zydron, P.C.
>
> These cases were actual Bennett and Zydron, P.C. cases wherein John E.
> Zydron was and is a general partner and processed by various attorneys within the
> Bennett and Zydron, P.C. law firm under the supervision, guidance and
> responsibility of Bennett and Zydron, P.C. and some cases where outside co-
> counsel assisted with the case. These cases are not cases processed under the new
> law firm of THE ZYDRON LAW FIRM, P.L.L.C.

(<u>Ex. B</u> to Burch Dec.; Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis.,

RFA # 1, attached as <u>Ex. C</u> to Burch Dec.)

7.      At the time when the Complaint was filed, all of the cases listed in Paragraph 7 of

the Complaint were listed on the Zydron Law Firm website on the "Case Results" page except

the cases listed in Paragraph 7 (ll) and (nn) of the Complaint.  (Compl. ¶ 7; <u>Ex. B</u> to Burch Dec.)

Exhibit B has been annotated in pen to show where the cases listed in Paragraph 7 of the

Complaint were listed on the Zydron Law Firm website.

8.      Each of the cases listed in Paragraph 7 of the Complaint was handled by Bennett and Zydron, P.C.  (Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 3, attached as <u>Ex. C</u>. to Burch Dec.)

9.      The Zydron Law Firm website listed other cases under the "Case Results" page to which Plaintiffs have not objected in the Complaint.  Such cases are marked in orange on <u>Exhibit B</u> to the Burch Declaration.

<u>"Press & News" Page</u>

10.      At the time when the Complaint was filed, the following disclaimer appeared on the "Press & News" page of the Zydron Law Firm website:

> The following Bennett and Zydron, P.C. cases are some of the actual cases and results achieved while John E. Zydron was and is a general partner at the Bennett and Zydron, P.C. Law Firm. Although one attorney is pictured in some of these cases, each case was handled by a team effort which included one or more attorneys and in some cases all the attorneys working at the time, one or more of the paralegals, nurse consultant, investigator, bookkeeper, receptionist, runner and in some cases the assistance of outside counsel. Each team member was highly and equally valued and contributed greatly to the success in these cases and to Bennett and Zydron, P.C. success in the legal community.

> In some of the cases where Zydron is pictured, he had a substantial role in handling the case and in some cases where Zydron is pictured he had a supporting role assuring sufficient staff, resources and assistance were available.

(<u>Ex. B</u> to Burch Dec.; Bennett and BS Firm's Answers to John E. Zydron's Requests for Admission, RFA # 2, <u>Ex. C</u> to Burch Dec.)

11.      Under the "Press News" page on the Zydron Law Firm website, there were several articles from <u>Virginia Lawyers Weekly</u> on cases handled by Bennett and Zydron, P.C. (<u>Ex. B</u> to Burch Dec.; Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 3, <u>Ex. C</u> to Burch Dec.)

5

12.     The <u>Virginia Lawyers Weekly</u> articles addressed by Plaintiffs in the Complaint are listed at Paragraph 7(a), (b), (h), (q), (ll), (mm), and (nn) of the Complaint, for a total of seven (7) <u>Virginia Lawyers Weekly</u> articles at issue.  (Compl. ¶ 7.)

13.     The Zydron Law Firm website listed some cases with <u>Virginia Lawyers Weekly</u> articles under the "Press News" page to which Plaintiffs have not objected in the Complaint. (<u>Ex. B</u> to Burch Dec.)

14.     Plaintiffs have not identified any individual, client or prospective client who is claimed to have been deceived or confused by any purportedly false or misleading information posted on Zydron Law Firm's website or in any of Defendants' other advertisements.   (<u>Ex. D</u> to Burch Dec.; Bennett and Sharp's Supp. Resp. to ZLF's Interrog., ROG #11 and #12.)

15.     Plaintiffs have offered no expert testimony, consumer surveys or other evidence demonstrating that clients, prospective clients, customers, transactions or other business was lost by Plaintiffs based on the purported false or misleading information posted on the Zydron Law Firm's website or in any of Defendants' other advertisements.   (<u>Ex. D</u> to Burch Dec., ROG #13.)

BS Firm Website

16.     At the time that the Complaint was filed, the BS Firm website (https://www.bennettandsharp.com) contained a page entitled "Case Results" which listed actual cases which were tried or settled.  A true and accurate copy of the relevant web pages is attached as <u>Exhibit E</u>.  (<u>Ex. E</u> to Burch Dec., ZLF 238-257).

17.     At the time when the Complaint was filed, the following introduction appeared on the BS Firm website  on the "Case Results" page above the actual cases listed:

> Here at Bennett & Sharp, PLLC, we are proud of the work we do for our clients in Hampton Roads, Virginia, and North Carolina. Now, you can read about some of the jury verdicts and settlements we have obtained in our cases that involve personal injury, traumatic brain injury, trucking accidents, wrongful

death, medical malpractice, and nursing home malpractice. Please take a few minutes and familiarize yourself with some of our work!

(Ex. C to Burch Dec., Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 6.)

18.    At the time when the Complaint was filed, the BS Website listed all of the cases in Paragraph 7 of the Complaint on its "Case Results" page except the cases listed in Paragraph 7(cc), (kk), (ll), and (nn).   (Compl. ¶ 7; Ex. E to Burch Dec.)

19.    At the time when the Complaint was filed, the BS Firm Website did not indicate that any of the cases listed on its website were cases that had been handled by Bennett and Zydron, P.C.   (Ex. C to Burch Dec., Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 8.)

## III.    Argument and Authorities

### A.    Legal Standard

Summary judgment on a claim, defense, or portion of either is proper under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party moving for summary judgment under Rule 56 bears the initial burden of proving that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the burden then shifts to the non-moving party to provide specific, admissible evidence demonstrating a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by

'showing' – that is, by pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. "One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged." Sterling Acceptance Corp. v. Tommark, Inc., 227 F. Supp. 2d 454, 458 (D. Md. 2002), aff'd, 91 F. App'x 880 (4th Cir. 2004); Fed. R. Civ. P. 56(e).

If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." Celotex, 477 U.S. at 322, 323. "The mere existence of a scintilla of evidence in support of [the non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. The nonmoving party must "go beyond the pleading" and by affidavits, depositions, answers to interrogatories, or admissions "designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.

Moreover, only disputed issues of *material* fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. "Disputed facts are 'material' if they are necessary to resolve[] the case; for issues to be 'genuine' they must be based on more than speculation or inference." Kribbs v. Wal-Mart Stores E., L.P., No. 4:05-cv-159, 2006 U.S. Dist. LEXIS 43453 at *8 (E.D. Va. June 27, 2006) (citing Thompson Everett, Inc. v. Nat'l Cable Advert., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995)).

**B.**  **There is No Evidence to Support a False Association / Reverse Passing Off Claim Under Section 1125(a)(1)(A)**

Subsection A of 15 U.S.C. § 1125(a)(1) "describes the cause of action known as 'false association.'"  See Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016), cert. denied, 137 S. Ct. 1202 (2017).  The type of false association claim Plaintiffs have asserted is purportedly "a 'reverse passing off,' claim which occurs when 'a producer misrepresents someone else's goods or services as his own.'"  Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 438 (4th Cir. 2010) (quoting Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003)).

The Fourth Circuit has made clear that a reverse passing off claim has four essential elements: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin."  Belmora, 819 F.3d at 710 (quoting Universal Furniture, 618 F.3d at 438).

If Plaintiffs fail to make a showing of facts sufficient to support their burden on any one of these essential elements, Defendants' summary judgment motion must be granted.

**(1)**  *The Work at Issue did not "Originate" with the Plaintiffs*

To satisfy the first element of a reverse passing off claim, a plaintiff must establish that "the work at issue originated with the plaintiff."  Belmora, 819 F.3d at 710.  The "origin of goods" as used in the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods."  Dastar, 539 U.S. at 37.  Thus, while "origin" can include "the trademark owner who commissioned or assumed responsibility for ('stood behind') production of the physical product,"  **it does *not* include "the creative talent" or "the person or entity that originated**

9

the ideas or communications that the 'goods' embody or contain." Id. (emphasis added); see also Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007) ("Dastar forecloses upon the claim that Penguin, by reproducing Silverstein's compilation of poems in the sixth section of Complete Poems, is liable to him for reverse passing off.  Penguin, and not Silverstein is the producer of the tangible product offered for sale in this case, the book of Complete Poems."); McCarthy on Trademarks and Unfair Competition § 27:77.1 (4th ed. 2007) (Under Dastar, "Lanham Act § 43(a)(1)(A)'s prohibition on false claims of origin cannot be extended to false claims of the creation of inventive or communicative works. Thus, 'reverse passing off' claims brought under Lanham Act § 43(a)(1)(A) cannot focus on allegedly false claims of authorship, invention or creation." (footnote omitted)); Williams v. UMG Recordings, Inc., 281 F. Supp. 2d 1177, 1184 (C.D. Cal. 2003) (noting that the Dastar holding is not limited to "goods," but also applies to "services").

It is uncontested that the case summaries and advertisements identified in paragraph 7 of the Complaint were all discussing cases and trials opened as Bennett and Zydron, P.C. cases and prosecuted on Bennet and Zydron, P.C.'s dime by attorneys and staff working for Bennett and Zydron, P.C.  (Ex. C to Burch Dec., Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 3.)

Extending the Dastar analysis to this case, it is Bennett and Zydron, P.C. that is the "producer" or owner of the "works" at issue in this case (i.e., the legal services rendered and the resulting favorable case verdicts listed in Paragraph 7 of the Complaint).   While Mr. Bennett may claim to be the "creative [legal] talent" behind these favorable case results, Dastar has made clear that only the "producer" of the goods or services can be said to be the "originator" for purposes of the Lanham Act.  Id.  Just as an "actor" cannot claim to have "originated" the films

he starred in for purposes of a reverse-passing off claim, neither can a lawyer claim to have "originated the works" under the Lanham Act for case results he was involved when those cases were handled and opened by the law firm for which the lawyer worked.  Thus, the "origin" of these case results and the narratives discussing the case results is Bennett and Zydron, P.C. and not Mr. Bennett personally or BSLaw Firm.

Because Plaintiffs cannot establish that the works at issue "originated" with the Plaintiffs as required under Section 1125(a)(1)(A), Defendants' summary judgment motion should be granted.   See Dastar, 539 U.S. at 37; Tao of Sys. Integration v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 572 (E.D. Va. 2004) (dismissing a reverse-passing off claim since there was no allegation or other basis to conclude the "origin" of the goods at services at issue was the plaintiff); Silverstein, 522 F. Supp. 2d at 601 (concluding that a reverse passing off claim was foreclosed where the plaintiff was the "author" but not the "producer" or originator of the goods at issue); Chalfant v. Tubb, 453 F. Supp. 2d 1308, 1318 (N.D. Okla. 2006) (dismissing a reverse passing off claim based on an allegation that defendant intentionally omitted plaintiff's name as coauthor of the screenplay since plaintiff was not the "producer" or "origin" of the work under Dastar).

### (2)     *No Showing of Consumer Confusion*

Plaintiffs have offered no evidence to support the existence of the third element of a reverse passing off claim – consumer confusion.  This element requires a showing that a "substantial number . . . of consumers are likely to be misled."   Scotts Co. v. United Indus. Corp., 315 F.3d 264, 280 (4th Cir. 2002).   "In absence of adequate proof of the likelihood of confusion, plaintiff is not entitled to prevail under . . . § 1125(a)." Sterling Acceptance Corp., 227 F. Supp. 2d at 458.

11

"While there is no bright line test to determine the existence of a likelihood of consumer confusion, recovery under the Lanham Act requires, at a minimum, that confusion, mistake or deception be likely, not merely possible."   Universal Furniture, 618 F.3d at 438 (citation omitted).   In determining likelihood of confusion, a court must consider: "(1) the strength or distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion."  Sterling, 227 F. Supp. 2d at 461 (citing Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va, Inc., 43 F.3d 922, 930 (4th Cir. 1995)).   Though not all of these factors will have equal relevance or applicability in each case, evidence of actual confusion is generally the most compelling evidence of likelihood of confusion.

Specifically, Plaintiffs have been unable to identify any individual, client or prospective client they allege was deceived or confused by any false or misleading information posted on Zydron Law Firm's website or in any of Defendants' other advertisements.   (See Ex. D to Burch Dec., Bennett and Sharp's Supp. Resp. to ZLF's Interrogs., ROG #11.)   Plaintiffs have also not identified even one client, prospective client, customer, transaction or other business that Plaintiffs lost based on the purported false or misleading information posted on the Zydron Law Firm's website or in any of Defendants' other advertisements.   (See Ex. D to Burch Dec., Bennett and Sharp's Supp. Resp. to ZLF's Interrogs., ROG #12.)   Further, Plaintiffs do not plan to offer any expert testimony, evaluation, survey or study to assess consumer reaction or consumer perception in order to prove likelihood of confusion.   (See Ex. D to Burch Dec., Bennett and Sharp's Resp. to ZLF's Interrogs., ROG #13.)[1]

---

[1] On May 2, 2018, five weeks *after* Plaintiffs' close of discovery, Plaintiffs filed a Motion to Compel certain evidence from Defendants – specifically, documentation recording whether a Zydron Law Firm client came in via

Without evidence of a likelihood of confusion, Plaintiffs cannot succeed on a reverse passing off claim and Defendants' summary judgment motion should be granted.  See, e.g., Suntree Techs., Inc. v. EcoSense Int'l, Inc., 802 F. Supp. 2d 1273, 1285 (M.D. Fla. 2011) (granting summary judgment because there was no evidence of likelihood of confusion and noting that "[t]here is no evidence that any customers ever actually received the product brochure or that any consumer considered the maintenance presentation when deciding which baffle box supplier to use"), aff'd, 693 F.3d 1338 (11th Cir. 2012).   "[O]ne de minims example of confusion, without more, does not satisfy the likelihood-of-confusion inquiry," id. (citing 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:14 (4th ed. 1996)), and Plaintiffs have been unable to point to even that.  See also S&L Vitamins, Inc. v. Australian Gold, Inc., 521 F. Supp. 2d 188, 208 (E.D.N.Y. 2007) (granting summary judgment as to a reverse passing off claim where plaintiff offered "no evidence showing that customers are confused as to whether AG is the creator of the Products" and concluding that plaintiff "failed to create a material issue of fact as to likelihood of confusion").

---

advertising or a referral.  (ECF No. 56.).  Thus, it is anticipated Plaintiffs will argue that Defendants have prevented them from establishing a likelihood of confusion by failing to respond to discovery.  However, Defendants asserted appropriate objections to the discovery requests at issue in a timely manner, and Plaintiffs had more than sufficient time to bring a motion to compel before their discovery period closed on March 28, 2018.  Further, there are ways in which Plaintiffs could have attempted to offer evidence of a likelihood of confusion without identifying an actual client who was confused (e.g., expert testimony, consumer surveys, etc.).  However, Plaintiffs chose not to pursue any such avenues of establishing confusion.  It is Plaintiffs' burden to offer evidence showing consumer confusion, and Plaintiffs have failed to offer enough evidence to create a material issue of fact as to consumer confusion. See, e.g., Flame S.A. v. Indus. Carriers, Inc., No. 2:13-cv-658, 2014 U.S. Dist. LEXIS 194764, at *8 (E.D. Va. July 31, 2014) (noting that "district courts in this circuit deny belated motions to compel filed close to, or after, the close of discovery" and noting that the moving party "chose not to exercise its right to file a motion to compel" before the close of discovery); Hare v. Comcast Cable Commc'ns. Mgmt., LLC, 564 F. App'x 23 (4th Cir. 2014) (unpublished) (finding the district court did not abuse its discretion when it denied a motion to compel evidence that was "crucial to the case," and a motion to extend the discovery deadline, when the moving party had ample time to secure the discovery but did not seek an extension or compulsion until discovery had closed).

C.    **There is No Evidence to Support a False Advertising Claim Under Section 1125(a)(1)(B)**

To bring a false advertising claim under the Lanham Act, a plaintiff must establish that

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 120 (4th Cir. 2011) (quoting Scotts Co. v. United Indus., 315 F.3d 264, 272 (4th Cir. 2002) (citation omitted)). "'[F]ailure to establish any one' of these five elements is 'fatal' to a plaintiff's claim." Verisign, Inc. v. XYZ.COM LLC, 848 F.3d 292, 299 (4th Cir. 2017).

(1)    *No Evidence of a "Literally False" Representation*

With respect to the first element, Plaintiffs have offered no evidence establishing that the advertisements at issue were false or misleading.   A plaintiff can establish the first element by showing an advertisement is either (a) literally false, or (b) literally true but likely to mislead or confuse consumers.  C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997).   In this case, Plaintiffs have taken the position that the statements at issue are "literally false."[2]

"In analyzing whether an advertisement . . . is literally false, a court must determine, first, the unambiguous claims made by the advertisement . . . and, second, whether those claims are

---

[2] It has been Plaintiffs' position thus far in briefing before this Court that they are basing their false advertisement claim on an allegation of "literal falsity" as opposed to a claim that the statements are literally true but misleading. See Pls.' Mem. in Opp'n to J. Zydron's Mot. to Compel, ECF No. 51 (noting that the "Plaintiffs here have no need to prove actual confusion . . . [w]here, as here, the statements made are literally false"); Court's Order on Motion to Compel, ECF No. 54 (noting that "in cases where an advertisement is literally false, *as alleged here*…" (emphasis added)).

false." <u>PBM Prods.</u>, 639 F.3d at 120 (citations omitted). "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." <u>Id.</u> (quoting <u>Scotts Co.</u>, 315 F.3d at 274). A false-by-necessary-implication claim must fail if the advertisement "can reasonably be understood as conveying different messages." <u>Scotts Co.</u>, 315 F.3d at 275. **"Only an <u>unambiguous</u> message can be literally false."** <u>Id.</u> at 275-76 (quoting <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.</u>, 290 F.3d 578, 587 (3d Cir. 2002) (emphasis in original)). A claim that is "implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false." <u>Design Res., Inc. v. Leather Indus. of Am.</u>, 789 F.3d 495, 502 (4th Cir. 2015) (quoting <u>Clorox Co. P.R. v. Proctor & Gamble Commercial Co.</u>, 228 F.3d 24, 35 (1st Cir. 2000) (citations omitted)).

"Although literal falsity is a question of fact, <u>C.B. Fleet, Co.</u>, 131 F.3d at 436, **whether a nonmovant has put forth sufficient evidence to establish a genuine dispute as to that fact is a legal question for the district court's determination**. <u>See</u> <u>Design Res.</u>, 789 F.3d at 502." <u>First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.</u>, 672 F. App'x 229, 236 n.6 (4th Cir. 2016) (granting summary judgment based on the fact that the advertisements at issue were "not unambiguous and therefore cannot be literally false") (emphasis added).

In this case, Plaintiffs have put forth no evidence to establish a genuine dispute as to the literal falsity of the statements. This is because the undisputed evidence establishes that all of the statements / advertisements at issue on Zydron Law Firm's website (see Paragraph 7 of the Complaint) were accompanied by disclaimers. In pertinent part, these disclaimers qualified any case summaries and statements of Mr. Zydron's involvement by explaining that:

> These cases were actual Bennett and Zydron, P.C. cases wherein John E. Zydron was and is a general partner and processed by various attorneys within the

> Bennett and Zydron, P.C. law firm under the supervision, guidance and responsibility of Bennett and Zydron, P.C. and some cases where outside co-counsel assisted with the case. These cases are not cases processed under the new law firm of THE ZYDRON LAW FIRM, P.L.L.C.

Disclaimer appearing on the "Case Results" Page of Zydron Law Firm's Website (Ex. B to Burch Dec.; Ex. C to Burch Dec., Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 1.)

> The following Bennett and Zydron, P.C. cases are some of the actual cases and results achieved while John E. Zydron was and is a general partner at the Bennett and Zydron, P.C. Law Firm. Although one attorney is pictured in some of these cases, each case was handled by a team effort which included one or more attorneys and in some cases all the attorneys working at the time, one or more of the paralegals, nurse consultant, investigator, bookkeeper, receptionist, runner and in some cases the assistance of outside counsel. Each team member was highly and equally valued and contributed greatly to the success in these cases and to Bennett and Zydron, P.C. success in the legal community.
>
> In some of the cases where Zydron is pictured, he had a substantial role in handling the case and in some cases where Zydron is pictured he had a supporting role assuring sufficient staff, resources and assistance were available.

Disclaimer appearing on the "Press & News" Page of Zydron Law Firm's Website (Ex. B to Burch Dec.; Ex. C to Burch Dec., Bennett and BS Firm's Answers to John E. Zydron's Req. for Admis., RFA # 2.)[3]

Thus, any statements regarding Mr. Zydron's involvement in a case during his time at Bennett and Zydron, P.C. cannot be "literally false" when it is undisputed that all of the statements were accompanied by a disclaimer, and when it is not disputed that all of the cases at issue in the Complaint were opened by and handled as Bennett and Zydron, P.C. cases, and when

---

[3] Unlike Defendant Zydron Law Firm's website which contains the disclaimers listed above, the BS Firm website lists on its "Case Results" page that it handled each of the cases listed, which includes all of the cases in Paragraph 7 of the Complaint except Paragraph 7(cc), (kk), (ll), and (nn)). Plaintiffs fail to indicate that most of the cases listed on the BS Firm website under "Case Results" were handled by Bennett and Zydron, P.C. (Ex. E. to Burch Dec.)

it is further undisputed that Mr. Zydron practiced law at and was an officer and member at the firm Bennett and Zydron, P.C. during the time these cases were prosecuted and resolved.

Given the qualifying language in the disclaimers alerting the reader that the cases discussed on the page were Bennett and Zydron, P.C. cases and that "each case was handled as a team effort," the statements must, at best, be considered to be ambiguous as to the exact level of Mr. Zydron's involvement.   Since ambiguous statement that can be read in more than one way *cannot* be "literally false," Plaintiffs' claim for false advertisement based on the "literal falsity" of the advertisements must be dismissed.  See First Data Merch. Servs. Corp., 672 F. App'x at 236 n.6 (granting summary judgment based on the plaintiffs' failure to establish that the advertisements were literally false); Scotts Co., 315 F.3d at 275 (concluding that "because the graphic can reasonably be understood as conveying different messages, Scotts' literal falsity argument must fail").

### (2)     *No Evidence of Consumer Deception*

The third element of a false advertising claim is that "the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience."  PBM Prods, 639 F.3d at 120 (quoting Scotts Co., 315 F.3d at 272).  Plaintiffs have failed to offer any evidence of consumer deception and for this additional reason Defendants' summary judgment motion should be granted.

As discussed above, Plaintiffs cannot establish the statements at issue are "literally false;" thus, consumer deception is not presumed and Plaintiffs must offer sufficient evidence for a jury to determine consumer deception.  "If the advertisement is true, but given the context, likely to mislead or confuse consumers, a plaintiff must also show that the advertisement does tend to mislead consumers."  EndoSurg Med., Inc. v. EndoMaster Med., Inc., 71 F. Supp. 3d 525, 554

(D. Md. 2014); <u>Suntree Techs.</u>, 802 F. Supp. 2d at 1288 ("If an advertisement is true but misleading, 'then the movant is required to present evidence of deception.'" (quoting <u>Osmose, Inc. v. Viance, LLC</u>, 612 F.3d 1298, 1308 (11th Cir. 2010))).  "A plaintiff asserting an implied falsity claim generally must present extrinsic evidence of consumer confusion."  <u>Scotts Co.</u>, 315 F.3d at 276 (concluding that the focus group evidence of consumer confusion was insufficient to support a finding of consumer confusion and overruling the district court's decision).

Despite the fact that "[c]onsumer confusion 'is most often proved by survey data'", Plaintiffs have offered no survey, focus group or expert evidence of consumer confusion.  <u>Id.</u>; <u>see also</u> <u>Suntree Techs.</u>, 802 F. Supp. 2d at 1288 (noting that "[i]n order to prove deception, consumer survey research is often 'key' evidence," and if survey or market research is unavailable, "plaintiff must still provide some sort of expert testimony or similar evidence" (citation omitted)).[4]  Thus, because Plaintiffs can only prevail on their implied falsity claim "by presenting extrinsic evidence of likely consumer confusion," <u>Scotts Co.</u>, 315 F.3d at 283, and because Plaintiffs have failed to offer any extrinsic evidence of consumer deception, the Court must grant summary judgment and dismiss Plaintiffs' false advertising claim.

### (3)            *No Evidence of Harm / Injury*

To satisfy the final element of a false advertising claim, Plaintiffs must "come forward with evidence of a causal connection between [Defendants'] alleged false advertising and either injury to the [Plaintiffs,] or benefit to the defendants."  <u>Tao of Sys. Integration</u>, 330 F. Supp. 2d at 673 (granting defendant's summary judgment motion where plaintiff failed to meet "its burden of producing evidence sufficient to establish a 'causal link' between [defendant's] actions and

---

[4] For the same reasons discussed in footnote 1 above, any claim by Plaintiffs that Plaintiffs should somehow be relieved of their obligation to establish consumer deception based on the quality of Defendants' discovery responses is unavailing when Plaintiffs bear the burden of proof and failed to file a motion to compel and gather the necessary evidentiary material within this Court's prescribed discovery deadlines.

any alleged harm to [plaintiff], or benefit to [defendant]"); see also Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 286 (4th Cir. 2003) ("In determining damages under the Lanham Act, the plaintiff bears the burden of proving a causal connection between its harms and the defendant's profits."), *abrogated on other grounds by* Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

This final element of harm is "not a minor or technical element of a Lanham Act claim," instead, it is a "core requirement that a plaintiff 'show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising . . .'" See Verisign, 848 F.3d at 299-300 (citing Lexmark Int'l Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014) (emphasis added).

Plaintiffs have offered no evidence that they have suffered actual damages.   Without a showing that "plaintiff has been or is likely to be injured as a result of the [alleged] misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its product," Plaintiffs cannot recover for false advertising.  See Verisign, 848 F.3d at 299 ("To recover damages under the Lanham Act, Verisign must show not only false advertising by XYZ, but also that XYZ's statements caused Verisign actual damages."); PMB Prod., 639 F.3d at 122 (summary judgment properly awarded to defendant in Lanham Act case because plaintiff could not prove that allegedly false statements caused any damage).

It is the Plaintiffs' burden to prove "a causal link between actual damages and [the Defendants'] actions" and its failure to offer any evidence to support this essential element requires that this Court grant Defendants' motion for summary judgment. See Verisign, 848 F.3d at 301 (granting summary judgment where plaintiff failed to satisfy its burden to demonstrate the statements at issue were casually linked to any damage to the plaintiff); Wall &

<u>Assocs. v. Better Bus. Bureau of Cent. Va., Inc.</u>, 685 F. App'x 277, 279 (4th Cir. 2017) (affirming a district court's rule 12(b)(6) dismissal based on failure to allege the necessary proximate cause between its alleged injury and defendants' allegedly violative conduct).

Because Plaintiffs have offered no evidence causally linking any purported harm or benefit to Defendants to the statements at issue, Plaintiffs simply cannot prevail on their false advertising claim.

### III.    <u>Conclusion</u>

For the reasons discussed above, Defendants John E. Zydron and Zydron Law Firm, PLLC request the Court enter Summary Judgment in their favor, that costs incurred herein be awarded, and for attorneys' fees under 15 U.S.C. § 1117(a).

JOHN E. ZYDRON AND
ZYDRON LAW FIRM, PLLC

By:    /Kristan B. Burch/
Kristan B. Burch, Esq. (VSB #42640)
Lauren Tallent Rogers, Esq. (VSB #82711)
Kaufman & Canoles, P.C.
150 W. Main Street
Suite 2100
Norfolk, VA 23510
(757) 624-3343
Facsimile: (888) 360-9092
kbburch@kaufcan.com
ltrogers@kaufcan.com
*Counsel for John E. Zydron and Zydron Law Firm, PLLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system on this 4th day of May, 2018, which will then send a notification of such filing to the following:

Gregory A. Giordano, Esquire
WILCOX & SAVAGE, P.C.
222 Central Park Ave., Suite 1500
Virginia Beach, VA 23462
ggiordano@wilsav.com
*Counsel for Plaintiff*


Kevin V. Logan, Esq.
Kenneth F. Hardt, Esq.
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
klogan@snllaw.com
khardt@snllaw.com
*Counsel for John E. Zydron*



       /Kristan B. Burch/
Kristan B. Burch, Esq. (VSB #42640)
Lauren Tallent Rogers, Esq. (VSB #82711)
Kaufman & Canoles, P.C.
150 W. Main Street
Suite 2100
Norfolk, VA 23510
(757) 624-3343
Facsimile: (888) 360-9092
kbburch@kaufcan.com
ltrogers@kaufcan.com
*Counsel for John E. Zydron and Zydron Law Firm,
PLLC*

16452376v4